State Court of Fulton County
**E-FILED**
24EV000055
11/3/2025 4:12 PM
Donald Talley, Clerk
Civil Division

**IN THE STATE COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| CLAYTON WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>BRIDGESTONE RETAIL OPERATIONS, LLC; WAYNE BROWN A/K/A TIRES PLUS TECHNICIAN 05; BAUTISTA WELDING AND CUSTOM TRAILERS MANUFACTURING LLC; JOHN DOE NOS. 1-10; and JOHN DOE ENTITIES NOS. 1-10,<br><br>Defendants. | * * * * * * * * * * * * * * * | Civil Action File<br>No. 24EV000055 |

**<u>PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL</u>**

COMES NOW Plaintiff Clayton Williams (hereinafter "Plaintiff") and files this Second Amended Complaint for Damages and Demand for Jury Trial, showing this Court the following:

## I. PARTIES, JURISDICTION, VENUE, AND SERVICE OF PROCESS

1.

Clayton Williams is an adult citizen and resident of the State of Georgia. By filing this lawsuit in this Court, Plaintiff avails himself of the jurisdiction and venue of this Court.

2.

Defendant Bridgestone Retail Operations, LLC ("Bridgestone") is a foreign limited liability company organized and existing under the laws of the State of Delaware and has its principal place of business at 200 4th Avenue South, Suite 100, Nashville, Tennessee 37201. Bridgestone is registered with the Georgia Secretary of State to transact business in Georgia and operates the Tires Plus Total Car Care located at 3041 Piedmont Rd NE, Atlanta, GA 30305,

where the services at issue were performed.[1] Venue is proper over Defendant Bridgestone Retail in this Court pursuant to O.C.G.A. § 14-2-510(3); the tort giving rise to this action occurred in Fulton County and Bridgestone Retail both transacts business and maintains an office in Fulton County. Defendant Bridgestone Retail has been duly served.

3.

Defendant Wayne Brown a/k/a 'Tires Plus Technician 05' and 'Weezy' ("Brown") is an individual who, at the time of the April 10, 2022, service, was employed at Tires Plus Total Car Care, 3041 Piedmont Rd NE, Atlanta, GA 30305, and was the technician assigned to Plaintiff's service ticket. Brown is a citizen and resident of Georgia and Fulton County. Venue and personal jurisdiction are proper. Brown has been duly served.

4.

Defendants Bridgestone Retail Operations, LLC and Wayne Brown a/k/a Tires Plus Technician 05, John Doe Nos. 1-5, and John Doe Entities Nos. 1-5 are hereinafter collectively referred to as the "Bridgestone Defendants."

5.

Defendant Bautista Welding and Custom Trailers Manufacturing LLC (hereinafter "Bautista") is a domestic limited liability company organized and existing under the laws of the State of Georgia. Bautista is a citizen and resident of Georgia and maintains its principal place of business and/or principal office address of 456 Funderburg Dr, Monticello, GA, 31064. Accordingly, personal jurisdiction and venue over Bautista is proper in this court. Bautista is a merchant and/or manufacturer involved in the design, manufacture, sale and provision of

---

[1] Plaintiff has excluded Bridgestone Americas, Inc. from this Amended Complaint based on the parties' joint submission and subsequent order to dismiss entered on March 12, 2024. The agreement set forth in the parties' joint motion to dismiss applies equally to this Amended Complaint and Plaintiff reserves all rights in conformance therewith.

products and services to the public, including the trailer that was provided to Plaintiff and which he was pulling with his Ford F-350 pickup truck at the time of the subject incident. Defendant Bautista may be served with process of the Summons and the Complaint by and through its registered agent for service of process: Flavio Bautista, 173 Church St, Monticello, GA, 31064.

6.

Bautista Welding and Custom Trailers Manufacturing LLC, John Doe Nos. 6-10, and John Doe Entities Nos. 6-10 are hereinafter collectively referred to as the "Trailer Defendants."

7.

At all relevant times, Defendants John Doe Nos. 1-10 and John Doe Entities Nos. 1-10 are that person, corporation, or other legal entity whose negligence and/or product(s) was a cause of Plaintiff's injuries and damages. Defendants John Doe Nos. 1-10 and John Doe Entities Nos. 1-10 were, at all relevant times, doing business in the State of Georgia, are residents of the State of Georgia for purposes of personal jurisdiction, and are subject to the jurisdiction and venue of this Court.

8.

Upon information and belief, Brown was the agent, co-conspirator, servant, and/or employee of Bridgestone, and both were at all times acting in concert with each other, within the course, scope, and authority of such agency, service, partnership, employment, joint venture, conspiracy, affiliation and/or franchise. All of said acts, as set forth herein, were performed with the knowledge, acquiescence, consent, and/or subsequent ratification of Bridgestone, and Bridgestone accepted the benefits thereof.

9.

Upon information and belief, each and every one of the Trailer Defendants was the agent, co-conspirator, servant, employee, partner, joint venturer, alter ego, affiliate, successor in interest, and/or franchisee of each of the other defendants, and each was at all times acting in concert with each other, within the course, scope, and authority of such agency, service, partnership, employment, joint venture, conspiracy, affiliation and/or franchise. All of said acts, as set forth herein, were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

10.

At all relevant times, general personal jurisdiction existed and exists over each of the Trailer Defendants because their principal places of business and places of incorporation are both located in Georgia. The Trailer Defendants are further subject to specific jurisdiction for the same reasons as apply to the Bridgestone Defendants as set forth herein.

11.

At all relevant times, general personal jurisdiction existed and exists over Wayne Brown a/k/a Tires Plus Technician 05 because he is a resident of the state of Georgia.

12.

At all relevant times, specific personal jurisdiction existed and exists over Bridgestone Retail Operations, LLC. The following facts support specific personal jurisdiction in this matter:

a) Bridgestone Retail, itself and through affiliated corporations, distributors, agents, representatives, and/or employees, were engaged in the business of inspecting, checking, examining, repairing, and servicing automobiles for the consuming public in the State of Georgia. This includes the inspection, checking, examination, repair, and servicing of Plaintiff's Ford F-350 pickup truck that was

provided through the Bridgestone Defendants and its agents and/or employees in the State of Georgia.

b) Bridgestone Retail specifically advertised services on a continuous basis in Georgia. Upon information and belief, it delivered brochures and other advertising materials to Georgia businesses and consumers to induce Georgia consumers to utilize Bridgestone services in Georgia, including Plaintiff Clayton Williams.

c) Bridgestone Retail maintains a presence in Georgia, including but not limited to multiple service providers, service stations, dealers, personnel, and/or other agents throughout Georgia.

d) Bridgestone Retail, in conjunction with its distributors, representatives, agents, and/or employees, established channels for providing regular advice, products, service, and product information to Georgia consumers such as Clayton Williams.

e) Bridgestone Retail's website directs Georgia consumers to Georgia repair and servicing facilities where Bridgestone's products and services are available to Georgia residents, including the specific Tires Plus Clayton Williams patronized.

f) At all relevant times, Bridgestone Retail served the Georgia market and expected sales, repair and servicing to occur in Georgia and for Georgia residents.

g) Bridgestone Retail's conduct with regard to servicing and repairing of automobiles was specifically directed at Georgia consumers in the State of Georgia, resulting in significant economic benefits.

h) Bridgestone Retail and/or its agents, representatives, and/or employees corresponded directly with Plaintiff Clayton Williams in the State of Georgia about the subject matter of this litigation.

i) Plaintiff's claims are connected with and/or related to Bridgestone Retail's contacts with Georgia.

j) There is little or no burden on Bridgestone Retail in litigating this case in a Georgia court where the tort occurred.

13.

Jurisdiction and venue are not proper, originally or by removal, in any U.S. District Court because complete diversity is lacking. Plaintiff and at least one Defendant are citizens and residents of Georgia.

## **OPERATIVE FACTUAL ALLEGATIONS**

14.

This is a personal injury action arising from a single automobile crash occurring on May 11, 2022, in which Plaintiff was severely injured as a result of the negligent and reckless acts and omissions of the Defendants, individually and/or collectively, which are described more fully herein.

15.

On or about March 12, 2022, Plaintiff leased a 2022 40-foot Bautista Trailer (believed to bear VIN number 4B9GF4020N1164135). Upon information and belief, that trailer was designed, manufactured, marketed, and sold by Defendant Bautista Welding and Custom Trailers Manufacturing LLC. An employee, agent, and/or representative of one and/or both of the Trailer Defendants provided recommendations for the type and style of trailer provided and provided

and/or installed wiring for the trailer lights and auxiliary brakes. Plaintiff was pulling this trailer at the time of the subject incident.

16.

On or about April 10, 2022, Plaintiff took his 2013 Ford F-350 Super Duty XLT pickup truck to the Tires Plus Total Car Care, TP-Buckhead, located at 3041 Piedmont Rd NE in Atlanta Georgia. Plaintiff explicitly stated to the employees of Tires Plus Total Car Care that he intended to use the truck on steep inclines while carrying a loaded trailer and requested a comprehensive inspection of the vehicle with authorization to perform any and all services necessary or even “helpful” for the safe operation of the truck in those conditions. The Bridgestone Defendants, including Defendant Wayne Brown represented that they would inspect, service, and repair Plaintiff’s vehicle, including but not limited to reportedly inspecting, servicing, repairing, and/or replacing the pickup truck’s rear brakes and reportedly inspecting and replacing the vehicle’s brake fluid.

17.

Bridgestone Retail individually and cumulatively consists of more than 2,200 company-owned consumer and commercial stores in the United States, including those stores bearing the public name of Tires Plus Total Car Care like the one on Piedmont Road in Atlanta. Bridgestone Retail markets the Tires Plus Total Car Care stores and holds them out to the public -- through advertisements, a website, in-store materials, and other sources -- as having skill and expertise in the inspection, servicing, evaluation, maintenance, and repair of vehicles so that vehicles can be operated safely. In particular, on www.TiresPlus.com, the official website of its stores, Bridgestone Retail advertises that its Tires Plus stores are competent to handle brake repairs and replacements, and Plaintiff relied upon the representations made to him that the Tires Plus store

was in fact competent and skilled to perform a full and safe repair/replacement when he agreed to have them service his vehicle.

18.

Plaintiff specifically informed Tires Plus staff he would be towing on steep grades and requested a comprehensive inspection and any services necessary for safe operation, including the brake system; Defendants accepted and billed for brake fluid exchange and new rear rotors, among other things.

19.

During the April 10, 2022, service, Defendants undertook paid work on the brake system and billed Plaintiff for, among other items, (a) 'BRAKE FLUID EXCHANGE' ($19.99) and 'BRAKE FLUID EXCHANGE LABOR' ($60.00), and (b) two rear brake rotors 'YH482220P Painted rotor' (2 × $240.99), as reflected on the final invoice.

20.

Subsequent inspection evidence shows the brake fluid exchange was not performed and the new rear rotors billed were not installed.

21.

Physical and fluid-sampling evidence confirms no brake bleeding was performed: (i) no wrench/witness marks on any caliper bleeder screws; (ii) the condition of brake fluid extracted at the calipers and the brake fluid reservoir indicated no exchange occurred; and (iii) brake fade attributable to old brake fluid occurred during the subject incident.

22.

Bridgestone Retail's written materials for the April 10, 2022, job states, "All parts are new unless otherwise specified," and the invoice billed for two new rear rotors despite Brown not installing any new rotors.

23.

Defendant Brown never obtained the correct rear rotors for the subject vehicle and therefore re-used the existing rotors and only installed pads, despite the invoice billing for two new rear rotors.

24.

Bridgestone's policies and procedures establish that a proper service requires its technicians to re-test the brake fluid with strips to ensure it is not contaminated.

25.

Defendant Brown did not re-test brake fluid with test strips after reportedly completing a 'brake fluid exchange' on the subject vehicle.

26.

Bridgestone did not replace and/or did not properly tighten one of the rear brake caliper screws on Plaintiff's vehicle.

27.

After committing one or more of the negligent acts or omissions described herein, the Bridgestone Defendants were further negligent by returning the subject vehicle to Plaintiff in an unsafe condition without providing any warning to him that they had failed to replace the dangerous brake fluid and/or failed to properly and safely inspect, service, repair, and/or replace his brakes.

28.

As a result of the non-performance and/or improper performance described above, Plaintiff reasonably believed his brakes and brake fluid had been properly and safely serviced as billed when it was not.

29.

As a result of the Bridgestone Defendants' various negligent acts and/or omissions, Plaintiff received his vehicle and drove it from the Tires Plus store believing that the brake inspection, service, repair and replacement had been completed in full, that his brakes were new and fully functioning, that his brake fluid was new, and that his vehicle was safe to drive, when in fact that was not the case and the vehicle was, in fact, in a compromised and unsafe condition that left him exposed to grievous and foreseeable risk of brake problems, brake failure, an accident, and serious injury.

30.

On May 11, 2022, a mere month after the Bridgestone Defendants purported to inspect, replace, and service the brake system on Plaintiff's vehicle, Plaintiff was transporting a trailer of sod for a customer in southern Colorado, pulling the Trailer Defendants' trailer. As he was descending a hill on Highway 160, driving reasonably and prudently under the posted speed limit, the brakes completely failed. Without the ability to brake or stop the vehicle, the vehicle increased speed as it was going downhill and eventually went out of control and rolled over, causing Plaintiff serious bodily injuries ("the subject incident").

31.

The loss of brakes on Plaintiff's vehicle caused the subject incident, and his resulting catastrophic injuries occurred as a proximate result of the unsafe and dangerous condition of the

brake system, which the Bridgestone Defendants falsely represented had been properly inspected, serviced, repaired, and/or replaced, when in truth no such work had been performed. This unsafe and dangerous condition was the proximate result of the Defendants' individual and/or collective negligent acts and/or omissions described herein through its agents, representatives, and/or employees.

32.

Plaintiff did not do any act, nor did he fail to do any act, which proximately caused the above-described crash that resulted from the collision, and instead reacted promptly and reasonably in the midst of a sudden and unexpected emergency situation.

33.

As the proximate result of the Defendants' negligence and breach of warranties, Plaintiff suffered and continues to suffer severe and painful injuries to his body and mind, including debilitating personal injuries which have resulted and will continue to result in physical and mental pain and suffering, medical bills and expenses, lost wages, a diminished capacity to labor, and a loss of full enjoyment of life.

34.

Defendants, individually and collectively, are liable to Plaintiff for all compensatory damages allowed by Georgia law, in an amount to be determined by the enlightened conscience of the jury based on the evidence at trial, and in any event, in an amount greatly in excess of the jurisdictional minimum amount required to confer jurisdiction in this Court.

**COUNT ONE**
**NEGLIGENCE OF THE BRIDGESTONE DEFENDANTS**

35.

Plaintiff incorporates by reference each and every factual allegation made elsewhere in this Complaint as though fully set forth herein.

36.

Plaintiff Clayton Williams took his 2013 Ford F-350 Super Duty XLT pickup truck to the Tires Plus Total Car Care, TP-Buckhead, located at 3041 Piedmont Rd NE, Atlanta, Georgia 30305, for brake system inspection, service, repair, and/or replacement just 30 days prior to the subject incident.

37.

According to the bill of service, the Bridgestone Defendants, including Defendant Brown and/or other individuals undertook inspection, service, repair, and replacement of the Ford F-350, including but not limited to its brake system, including supposed replacement of the rear brakes and the vehicle's brake fluid.

38.

The Bridgestone Defendants voluntarily, and for profit, undertook work on Plaintiff's Ford F-350's brake system, and knew or should have known of the condition of that system at the time of such work and following such work.

39.

The Bridgestone Defendants hold themselves out as experts in inspection, servicing, repair, and replacement of brakes and brake systems. As a retailer holding itself out to the public as a competent provider of vehicle repair services, the Bridgestone Defendants owed a legal duty, and/or undertook duties on April 10, 2022, to reasonably perform the tasks of inspecting,

evaluating, servicing, repairing, replacing, or otherwise performing work on Plaintiff's Ford F-350, and its brake system in particular, in a reasonable manner and with due care, consistent with its specialized skill, expertise and knowledge and in a manner that would not cause harm or injury to users of the vehicle or others.

40.

The Bridgestone Defendants had a duty to adequately inspect, service, repair or replace the brakes, brake fluid, and brake system of the vehicle.

41.

The Bridgestone Defendants had a duty to issue a clear warning to Plaintiff Clayton Williams regarding any dangers that still existed or then existed after it worked on the vehicle's brake system, which could be associated with continuing to drive on the Ford F-350 after the Defendants completed brake inspection, service, repair, and/or replacement of all or parts of that brake system.

42.

The Bridgestone Defendants breached their aforementioned duties when they failed to safely and adequately inspect, service, repair or replace the brakes, brake fluid, and/or any part of the brake system on Plaintiff's Ford F-350.

43.

The Bridgestone Defendants breached their aforementioned duties when they failed to warn Plaintiff Clayton Williams of any dangerous condition of the brakes or brake system following their inspection, service, repair, and/or replacement of the brakes, brake fluid, and/or any part of the brake system on Plaintiff's Ford F-350, and allowed Plaintiff Williams to drive

off of its lot without issuing a clear warning of any such dangers associated with the vehicle's brakes.

44.

The Bridgestone Defendants breached the duties they had and/or undertook directly or through their agents and/or employees in one or more of the following ways which are pled, to the extent necessary, in the alternative:

a. The Bridgestone Defendants negligently failed to properly detect, recognize, and safely repair and/or replace worn and/or ineffective brakes; and/or

b. The Bridgestone Defendants negligently inspected, serviced, repaired, and/or replaced the brakes on the Ford F-350 such that it created a dangerous condition in the vehicle; and/or

c. The Bridgestone Defendants affirmatively damaged the vehicle's brake system during the course of the inspection, service, repair, and replacement process; and/or

d. The Bridgestone Defendants negligently failed to replace the brake fluid in the vehicle, despite charging for such service, resulting in a dangerous condition that caused or contributed to the brake failure; and/or

e. The Bridgestone Defendants negligently failed to replace the rotors on the vehicle, despite charging for such service, resulting in a dangerous condition that caused or contributed to the brake failure; and/or

f. The Bridgestone Defendants negligently failed to replace and/or properly secure a caliper bolt on the vehicle, resulting in a dangerous condition that caused or contributed to the brake failure; and/or

g. The Bridgestone Defendants negligently failed to adequately hire, train, monitor and/or supervise the activities, actions, and/or inactions of its agents, representatives, and/or employees, which hiring, training, monitoring and/or supervision would have prevented or guarded against the tortious acts and omissions giving rise to this case; and/or

h. The Bridgestone Defendants negligently failed to warn Plaintiff of a dangerous condition that existed on his vehicle; and/or

i. In general, the Bridgestone Defendants negligently knowingly failed to warn and/or adequately warn of foreseeable dangerous conditions of which it had, or should have had, superior knowledge given its resources and representations of expertise.

j. Bridgestone Retail is vicariously liable for the acts and/or omissions of Defendant Brown and other employees and/or agents with respect to the Plaintiff's Ford F-350.

45.

At the time the Bridgestone Defendants serviced the subject vehicle and its brake system, they knew or should have known that the condition of the brakes, brake repairs and/or lack of brake fluid replacement would cause the vehicle to be unreasonably dangerous and pose an unreasonable risk of loss of brakes and resulting lack of control of the vehicle, and harm to users, including Plaintiff, during ordinary and foreseeable driving maneuvers.

46.

The Bridgestone Defendants knew, or should have known, that the defects or dangers that existed at the time it left their hands were unknown and/or unforeseeable by ultimate users, including Plaintiff, and the general public that encountered the Ford F-350 vehicle.

47.

The Bridgestone Defendants' negligence was a proximate cause of the injuries to Plaintiff Clayton Williams and of his resulting damages.

48.

As a proximate result of the Bridgestone Defendants' negligence, the subject incident occurred and Plaintiff suffered and continues to suffer severe and painful injuries to his body and mind, including debilitating personal injuries which have resulted and will continue to result in physical and mental pain and suffering, medical bills and expenses, a diminished capacity to labor, and a loss of full enjoyment of life.

49.

The Bridgestone Defendants are liable for the injuries and damages Plaintiff suffered as the proximate cause of Defendants' negligence in an amount to be determined by the enlightened conscience of the jury based on the evidence at trial, and in any event, in an amount greatly in excess of the jurisdictional minimum amount required to confer jurisdiction in this Court.

**COUNT TWO**
**BRIDGESTONE RETAIL BREACH OF IMPLIED WARRANTIES**

50.

Plaintiff incorporates by reference each and every factual allegation made elsewhere in this Complaint as though fully set forth herein.

51.

Under Georgia law, unless excluded or modified, all products sold come with an implied warranty of merchantability to protect consumers. This implied warranty requires all goods sold to be fit for the ordinary purposes for which such goods are used as set forth in Ga. Code Ann. § 11-2-314.

52.

Additionally, where the seller has reason to know any particular purpose for which the goods are required, there is an implied warranty that the goods shall be fit for such purpose as set forth in Ga. Code Ann. § 11-2-315.

53.

When Plaintiff Williams purchased new brakes, brake system parts, and/or brake fluid from Bridgestone Retail, it did not expressly exclude any implied warranties.

54.

When Plaintiff Williams purchased new brakes, brake system parts, and/or brake fluid from Bridgestone Retail, Bridgestone Retail knew the particular purpose of the subject brakes and brake fluid was for use on the subject vehicle to ensure the brakes would properly function.

55.

On May 11, 2022, as Plaintiff Williams was descending a hill, driving reasonably and prudently under the posted speed limit, the newly inspected, replaced, repaired, and/or serviced brakes completely failed, causing him to lose all braking ability. Without the ability to brake or stop the vehicle, the vehicle increased speed as it was going downhill and eventually went out of control and rolled over, causing Plaintiff serious bodily injuries.

56.

Because the sudden and catastrophic loss of brakes a mere month after the provision of products and services was unwarranted, the brakes, brake system parts, and/or brake fluid sold by Bridgestone Retail to Plaintiff Williams were not fit for their ordinary purpose, or the particular purpose for which such brakes and fluid are required.

57.

By selling Plaintiff Williams brakes, brake system parts, and/or brake fluid that was not fit for its ordinary purpose, or the particular purpose for which such brakes and brake fluid are required, Bridgestone Retail breached the implied warranties of merchantability and fitness.

58.

Bridgestone Retail's breach of warranties was a proximate cause of the injuries to Plaintiff Clayton Williams and of his resulting damages.

59.

As a proximate result of Bridgestone Retail's breach of warranties, the subject incident occurred and Plaintiff suffered and continues to suffer severe and painful injuries to his body and mind, including debilitating personal injuries which have resulted and will continue to result in physical and mental pain and suffering, medical bills and expenses, lost wages, a diminished capacity to labor, and a loss of full enjoyment of life.

60.

As a result of Bridgestone Retail's breach, Bridgestone Retail is strictly liable to Plaintiff Williams in an amount to be determined by the enlightened conscious of the jury based on the evidence at trial, and in any event, in an amount greatly in excess of the jurisdictional minimum amount required to confer jurisdiction in this Court.

**COUNT THREE**
**BRIDGESTONE RETAIL'S BREACH OF EXPRESS WARRANTIES**

61.

Plaintiff incorporates by reference each and every factual allegation made elsewhere in this Complaint as though fully set forth herein.

62.

When Plaintiff Williams purchased the subject brakes, brake system parts, and/or brake fluid from the Bridgestone Defendants, Bridgestone Retail provided express warranties, pursuant to Ga. Code Ann. § 11-2-313, that the subject brakes, brake system parts, and/or brake fluid was safe, free from defect, new, merchantable, and fit for the ordinary purposes or the particular purpose for which such brakes and fluid are required.

63.

On May 11, 2022, as Plaintiff Williams was descending a hill, driving reasonably and prudently under the posted speed limit, the newly inspected, replaced, repaired, and/or serviced brakes completely failed, causing him to lose all braking ability. Without the ability to brake or stop the vehicle, the vehicle increased speed as it was going downhill and eventually went out of control and rolled over, causing Plaintiff serious bodily injuries.

64.

Because the sudden and catastrophic loss of brakes was unwarranted, the brakes, brake system parts, and/or brake fluid sold by Bridgestone Retail to Plaintiff Williams were not safe, free from defect, new, merchantable, or fit for their ordinary purpose or the particular purpose for which such brakes and fluid are required.

65.

By selling Plaintiff Williams brakes, brake system parts, and/or brake fluid that was not safe, free from defect, new, merchantable, or fit for their ordinary purpose or the particular purpose for which such brakes and fluid are required, Bridgestone Retail breached the express warranties for the brakes, brake system parts, and/or brake fluid.

66.

Bridgestone Retail's breach of warranties was a proximate cause of the injuries to Plaintiff Clayton Williams and of his resulting damages.

67.

As a proximate result of Bridgestone Retail's breach of express warranties, the subject incident occurred and Plaintiff suffered and continues to suffer severe and painful injuries to his body and mind, including debilitating personal injuries which have resulted and will continue to result in physical and mental pain and suffering, medical bills and expenses, lost wages, a diminished capacity to labor, and a loss of full enjoyment of life.

68.

As a result of Bridgestone Retail's breach, Bridgestone Retail is strictly liable to Plaintiff Williams in an amount to be determined by the enlightened conscious of the jury based on the evidence at trial, and in any event, in an amount greatly in excess of the jurisdictional minimum amount required to confer jurisdiction in this Court.

**COUNT FOUR**
**<u>BRIDGESTONE RETAIL'S FRAUD</u>**

69.

Plaintiff incorporates by reference each and every factual allegation made elsewhere in this Complaint as though fully set forth herein.

70.

On April 10, 2022, Bridgestone, through its employee Wayne Brown and other agents, represented orally and in the written invoice that it had performed a "brake fluid exchange" on Plaintiff's Ford F-350, meaning that the existing brake fluid had been drained and replaced with new fluid and the old rear rotors were replaced with new rotors. Brown and Bridgestone also

represented that Plaintiff's Ford F-350 was in need of new rotors and that such rotors were in fact removed and replaced them with brand new rotors. Brown and Bridgestone further represented that the brake system was new, safe and suitable for driving on steep inclines.

71.

Bridgestone's representations were material and false. A forensic inspection of the subject vehicle showed that the bleeder screws were untouched, no new DOT-3 brake fluid was present in the system, and the brake fluid remained old and/or contaminated; no complete brake fluid exchange had been performed.

72.

Bridgestone's representations were material and false. Although the Plaintiff was charged for two new rotors and new rotors appeared on the paperwork provided to the Plaintiff at the time of service, new rotors were never provided and were never installed on the Plaintiff's vehicle.

73.

The Bridgestone Defendants knew these representations were false or acted with reckless disregard for the truth.

74.

Brown received a commission equal to approximately twelve percent of the invoice and his compensation increased with the amount billed.

75.

Bridgestone incentivized charging for services not performed.

76.

Defendants intended that Plaintiff rely on these representations in paying for the service and operating his vehicle.

77.

Plaintiff justifiably relied on Defendants' representations by paying the invoice and using his truck on a steep mountain pass; he would not have driven the truck had he known the brake fluid remained contaminated or that he had not received new rotors as represented.

78.

Defendants' fraudulent misrepresentations proximately caused the brake failure and Plaintiff's injuries and damages. Plaintiff seeks recovery of compensatory damages, punitive damages under O.C.G.A. § 51-12-5.1, and attorney's fees and expenses of litigation under O.C.G.A. § 13-6-11.

**COUNT FIVE**
**NEGLIGENCE OF THE TRAILER DEFENDANTS**

79.

Plaintiff incorporates by reference each and every factual allegation made elsewhere in this Complaint as though fully set forth herein.

80.

Plaintiff leased a 2022 40-foot Bautista Trailer (believed to bear VIN number 4B9GF4020N1164135). Upon information and belief, the Bautista trailer was designed, manufactured, marketed, and sold by Defendant Bautista Welding and Custom Trailers Manufacturing LLC. Plaintiff was pulling this trailer at the time of the subject incident.

81.

The Trailer Defendants undertook to provide recommendations for the type and style of trailer provided as well as undertaking provision, installation, and/or approval of wiring and installation of wiring for the trailer lights and auxiliary brakes.

82.

The Trailer Defendants voluntarily, and for profit, undertook to provide a trailer and wiring for the trailer lights and auxiliary brakes for use with Plaintiff's Ford F-350, and knew or should have known of the condition of that trailer and/or wiring at the time of such provision.

83.

The Trailer Defendants had a duty to provide a safe trailer to Plaintiff for use, to provide a proper trailer in size and purpose, to provide safe and working wiring for the trailer lights and auxiliary brakes on the trailer, and to ensure proper hookup of such wiring.

84.

The Trailer Defendants had a duty to issue a clear warning to Plaintiff Clayton Williams regarding any dangers that still existed or then existed in the trailer and/or wiring for the trailer lights and auxiliary brakes.

85.

The Trailer Defendants breached their aforementioned duties when they failed to safely and adequately provide a safe trailer to Plaintiff for use, failed to provide a proper trailer in size and purpose, and/or failed to provide and/or ensure safe wiring and installation of wiring for the trailer lights and auxiliary brakes.

86.

The Trailer Defendants breached their aforementioned duties when they failed to warn Plaintiff Clayton Williams of any dangers that existed in the trailer and/or its wiring for the trailer lights and auxiliary brakes.

87.

The Trailer Defendants breached their duties they had and/or undertook directly or through their agents and/or employees in one or more of the following ways which are pled, to the extent necessary, in the alternative:

a. The Trailer Defendants negligently recommended and/or provided an improper trailer for the known purpose; and/or

b. The Trailer Defendants negligently provided, installed, and/or approved wiring for the trailer's lights and auxiliary brakes such that it added to a dangerous condition in the vehicle; and/or

c. The Trailer Defendants affirmatively damaged the vehicle's wiring for the trailer's lights and auxiliary brakes such that it added to a dangerous condition in the vehicle; and/or

d. The Trailer Defendants negligently failed to adequately hire, train, monitor and/or supervise the activities, actions, and/or inactions of its agents, representatives, and/or employees, which hiring, training, monitoring and/or supervision would have prevented or guarded against the acts and omissions discussed in this Count; and/or

e. The Trailer Defendants negligently failed to warn Plaintiff of a dangerous condition that existed with respect to the trailer and/or wiring for the trailer's lights and auxiliary brakes.

88.

At the time the Trailer Defendants provided and/or installed the trailer and wiring for the trailer's lights and auxiliary brakes they knew or should have known that the condition of the trailer and/or wiring for the trailer's lights and auxiliary brakes would contribute to lack of control of the vehicle, and harm to users, including Plaintiff, during ordinary and foreseeable driving maneuvers.

89.

The Trailer Defendants knew, or should have known, that dangers that existed at the time the trailer left their hands were unknown and/or unforeseeable by ultimate users, including Plaintiff, and the general public.

90.

The Trailer Defendants' negligence was a proximate cause of the injuries to Plaintiff Clayton Williams and of his resulting damages.

91.

As a proximate result of the Trailer Defendants' negligence, in part, the subject incident occurred and Plaintiff suffered and continues to suffer severe and painful injuries to his body and mind, including debilitating personal injuries which have resulted and will continue to result in physical and mental pain and suffering, medical bills and expenses, lost wages, a diminished capacity to labor, and a loss of full enjoyment of life.

92.

The Trailer Defendants are liable for the injuries and damages Plaintiff suffered as the proximate cause of their negligence in an amount to be determined by the enlightened conscience

of the jury based on the evidence at trial, and in any event, in an amount greatly in excess of the jurisdictional minimum amount required to confer jurisdiction in this Court.

**DAMAGES CLAIMED BY PLAINTIFF**

93.

Plaintiff Clayton Williams claims monetary damages against the Defendants, and each of them:

(a) for all components of the mental and physical pain and suffering endured by him before impact, upon impact, following the impact and during his treatment following the subject incident, and up until the present time, in an amount to be determined by the enlightened conscience of the jury;

(b) for all components of the mental and physical pain and suffering Plaintiff will endure in the future as a result of the subject incident and the medical treatment received following the subject incident, in an amount to be determined by the enlightened conscience of the jury;

(c) for all past, present and future economic losses, including medical bills, medical expenses, economic loss, and diminished future income and earning capacity proximately flowing from, substantially caused by, or resulting from the subject incident, as to be shown more fully by the evidence at trial and in an amount to be determined by the enlightened conscience of the jury;

(d) for the loss of full enjoyment of life Plaintiff Williams has suffered and/or will continue to suffer in the future as a proximate result of the subject incident and the injuries sustained therein, in an amount to be determined by the enlightened conscience of the jury;

(e) punitive damages against the Bridgestone Defendants for their willful and wanton misconduct and fraudulent misrepresentations, pursuant to O.C.G.A. § 51-12-5.1; and,

(f) attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 due to the Bridgestone Defendants' bad faith and fraud.

## PRAYER FOR RELIEF

94.

WHEREFORE Plaintiff Clayton Williams prays for the following relief:

(a) That summons issue requiring the Defendants, and each of them, to appear as provided by law to answer this Complaint;

(b) That Plaintiff receives a trial by jury;

(c) That Plaintiff recover all damages claimed in the paragraphs above and any other damages authorized by Georgia law under the evidence adduced at trial;

(d) That all costs be cast against the Defendants; and

(e) For such other and further relief as the Court shall deem just and appropriate.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

This 3rd day of November 2025.

WETHERINGTON LAW FIRM, P.C.
*/s/ Matt Q. Wetherington*
MATTHEW Q. WETHERINGTON
Georgia Bar No. 339639
ISAAC LEZCANO
Georgia Bar No. 439904

1800 Peachtree St., NW
Suite 370
Atlanta, Georgia 30309
Phone/Fax: (404) 888-4444
matt@wfirm.com
isaac@wfirm.com

JORDAN LAW
JASON W. JORDAN
Colorado Bar No. 37263
ANNE M. DIERUF
Colorado Bar No. 36147
5445 DTC Parkway, Suite 1000
Greenwood Village, CO 80111
Phone: (303) 766-8153
Fax: (303) 766-5568
jason@jordanlaw.com
anne@jordanlaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

COMES NOW Plaintiff, by and through the undersigned counsel, and HEREBY CERTIFIES that on this day, a true and correct copy of the foregoing *PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL* was served via Odyssey eFile & Serve, which sends an electronic copy of the same to all counsel of record, and by depositing a copy of the same in the United States mail with sufficient postage affixed thereon to ensure delivery to the following:

Bautista Welding and Custom Trailers Manufacturing LLC
Attn: Flavio Bautista, Registered Agent
173 Church Street
Monticello, GA, 31064

This 3rd day of November 2025.

WETHERINGTON LAW FIRM, P.C.
*/s/ Matt Q. Wetherington*
MATTHEW Q. WETHERINGTON
Georgia Bar No. 339639
ISAAC LEZCANO
Georgia Bar No. 439904

1800 Peachtree St., NW
Suite 370
Atlanta, Georgia 30309
Phone/Fax: (404) 888-4444
matt@wfirm.com
isaac@wfirm.com

JORDAN LAW
JASON W. JORDAN
Colorado Bar No. 37263
ANNE M. DIERUF
Colorado Bar No. 36147

5445 DTC Parkway, Suite 1000
Greenwood Village, CO 80111
Phone: (303) 766-8153
Fax: (303) 766-5568
jason@jordanlaw.com
anne@jordanlaw.com

*Counsel for Plaintiff*